## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**SHERYL DENISE KELLUM,**

> **Plaintiff,**

v.                                                            **Case No.  2:18cv543**

**ISLE OF WIGHT COUNTY, VIRGINIA,**

**and**

**GERALD H. GWALTNEY,**
**Individually and in his Official Capacity as**
**Commissioner of the Revenue of**
**Isle of Wight County,**

> **Defendants.**

### REPORT AND RECOMMENDATION

This matter is before the Court on the motions for summary judgment of Defendant Isle of Wight County, Virginia ("County"), and Defendant Gerald H. Gwaltney, Commissioner of Revenue of Isle of Wight ("Gwaltney") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 56, and accompanying memoranda of law.  ECF Nos. 23-26.  Plaintiff Sheryl Denise Kellum ("Kellum") filed a memorandum in opposition. ECF No. 30.  The Defendants each filed a Reply.  ECF Nos. 34-35.  This matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to a Referral Order from the United States District Judge.  ECF No. 36; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72.   For the foregoing reasons, the undersigned **RECOMMENDS** that the Defendants' motions for summary judgment, ECF Nos. 23 and 25, be **GRANTED.**

### I. OVERVIEW

The Commissioner of Revenue is a constitutional officer who derives his authority from

the Virginia Constitution. Gerald Gwaltney is the elected Commissioner of Revenue for the Isle of Wight County, and has held that position since 2006. Because the Commissioner of Revenue derives his authority from the Virginia Constitution, a constitutional officer is not an employee of the county in which they work, and is not subject to any authority of a county. The Commissioner of Revenue is responsible for tax administration with the County, including applying the personal property tax to vehicles located within the County.

Plaintiff Denise Kellum worked in the Commissioner of Revenue's office in the Isle of Wight from 2009 until her termination in 2017. Kellum suffers from multiple sclerosis. Originally, she was permitted to park on the side of the building that allowed her a shorter walk to her work station. In 2013, Kellum was no longer allowed to park in her usual spot. In an effort to regain her parking spot, Kellum consulted with Brandy Day, the County's Human Resources Director. Brandy Day informed County officials that Kellum's claim had merit and that Kellum should be permitted to park in her usual spot. Brandy Day was fired from the County shortly thereafter. Kellum filed two EEOC charges—one in 2014 and one in 2015. Brandy Day ultimately brought a lawsuit against the County for wrongful termination and retaliation in violation of the ADA because she advocated for Kellum's parking space accommodation. In January 2017, both Kellum and Gwaltney testified favorably for Brandy Day in her case against the County.

During the first week of February 2017, another employee in the Commissioner of Revenue's office discovered that Kellum did not pay a personal property tax for her vehicle in 2016. In March 2016, Kellum had asked another employee, Jill Benhart, to remove Kellum's vehicle from the Isle of Wight tax rolls because she was moving to Surry County to live with her daughter, and Benhart did so. However, Kellum never submitted a personal property tax form to Surry County, and thus her vehicle was not taxed by either Isle of Wight or Surry County. Kellum

2

maintains that her failure to register her vehicle and pay the personal property tax was an accident. However, Gwaltney terminated Kellum shortly thereafter.

Kellum filed the instant action against the County and Gwaltney, alleging violations of the First and Fourteenth Amendments, and violations of the Americans with Disabilities Act. In her reply brief, Kellum withdraws her First Amendment claims and agrees to their dismissal. The remaining claims are discussed in detail below.

## II. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial. *See, id.* at 324. Conclusory statements, without specific evidentiary support, are insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252. A party opposing summary judgment must present more than "a scintilla of evidence." *Id.* at 251.

Under Rule 56 the evidence proffered, either in support of or in opposition to, the summary judgment motion, must be admissible. *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993); *see also, Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) *holding modified*

3

by *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420 (4th Cir. 2000) (holding that, in opposing a defendant's motion for summary judgment, "[t]he summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to specific materials in the record. Fed. R. Civ. P. 56(c). "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(b).

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court has fashioned its undisputed material facts from those facts put forth by the parties which were uncontested, consistent with E.D. Va. Loc. Civ. R. 56(b). There do not appear to be any disputes regarding facts necessary and material to resolution of the instant case. As such, this Court resolves the motions for summary judgment pursuant to the following undisputed material facts:

Gwaltney is the present Commissioner of Revenue for the County. ECF No. 24 at 1, IOWC SOF ¶ 1; ECF No. 26, Gwaltney SOF ¶ 1. Gwaltney held the position of Commissioner of Revenue from January 1980 until March 2002.[1] ECF No. 24 at 1, IOWC SOF ¶ 1; ECF No. 26, Gwaltney SOF ¶ 1. Gwaltney was reelected as the Commissioner of Revenue in November 2006 and has been in that position since then. ECF No. 24 at 1, IOWC SOF ¶ 1; ECF No. 26, Gwaltney SOF ¶ 1.

---

[1] Gwaltney's brief in support of his motion for summary judgment states that he served as the Commissioner of Revenue until 2005. ECF No. 26 at 2, Gwaltney SOF ¶ 1. However, the record is clear that Gwaltney worked as the Commissioner of Revenue from 1980 until he began his job as Deputy Tax Commissioner for the Commonwealth in March 2002. *See* ECF No. 26, attach. 1 at 32 (Gwaltney Dep. 78:14-17).

The Commissioner of Revenue is a constitutional officer. ECF No. 24 at 2, IOWC SOF ¶ 3; ECF No. 26 at 2, Gwaltney SOF ¶ 2. As such, Gwaltney is elected by the citizens of Isle of Wight County, he does not report to the County Administrator or Board of Supervisors, and he cannot be fired. ECF No. 24 at 2, IOWC SOF ¶ 3; ECF No. 26 at 2, Gwaltney SOF ¶ 2. As the Commissioner of Revenue, Gwaltney is responsible for tax administration, including "identifying and assessing all personal and real property in the County" that is "subject to taxation." ECF No. 24 at 2, IOWC SOF ¶ 4; ECF No. 26 at 2, Gwaltney SOF ¶ 2. No more than ten employees have worked in the Commissioner of Revenue's office while Gwaltney has been the Commissioner of Revenue. ECF No. 24 at 4, IOWC SOF ¶ 12; ECF No. 26 at 3, Gwaltney SOF ¶ 3.

**Kellum's Parking Space Dispute**

Kellum began work in the office of the Commissioner of Revenue in 2009[2] with the title Deputy Clerk I, and was later promoted to Deputy Clerk II. ECF No. 24 at 10, IOWC SOF ¶ 37; ECF No. 26 at 3, Gwaltney SOF ¶¶ 3-4. Kellum suffers from Multiple Sclerosis ("MS"), and has had MS since she began working in the office of the Commissioner of Revenue.[3] ECF No. 26 at 3, Gwaltney SOF ¶ 5; ECF No. 30 at 11, Kellum SOF ¶¶ 29-30.

At the outset of Kellum's employment, Kellum parked in visitor spaces near the Commissioner of Revenue's office because it was on the side of the building near the Commissioner of Revenue's office and her work station. ECF No. 26 at 3, Gwaltney SOF ¶ 5; ECF No. 30 at 11-12, Kellum SOF ¶ 31. However, in late 2013, County Administrator Anne

---

[2] Kellum's brief in opposition to the summary judgment motions states that Kellum was hired to work in the Commissioner of Revenue's office in 2007. ECF No. 30 at 6, Kellum SOF ¶ 6. However, the record is clear that Kellum was not hired until 2009. ECF No. 30, attach. 20 at 7 (Kellum Dep. 24:11-20).

[3] None of the parties posited the contention that Kellum's multiple sclerosis is a "disability" as defined by the Americans with Disabilities Act ("ADA"). *See* ECF Nos. 24, 26, 30, *passim*. However, courts have recognized multiple sclerosis as such an impairment, *see, e.g., Laird v. Fairfax Cty. Virginia*, No. 1:17-CV-1408, 2018 WL 6422112, at *1 (E.D. Va. Dec. 4, 2018), and Kellum's status as a qualified individual with a disability under the ADA is not contested by Defendants.

Seward ("Seward") informed Kellum that she could no longer park in her usual spot. ECF No. 26 at 3, Gwaltney SOF ¶ 7; ECF No. 30 at 11, Kellum SOF ¶ 32. Kellum complained that she could no longer park closer to the building, and Gwaltney instructed Kellum to file a grievance with the County's Human Resources office. ECF No. 26 at 3, Gwaltney SOF ¶ 7; ECF No. 30 at 12, Kellum SOF ¶ 32.

In late February 2014, Kellum approached Director of Human Resources for the County, Brandy Day ("Day"), who informed Kellum that she needed to file a written grievance. ECF No. 26 at 4, Gwaltney SOF ¶ 8; ECF No. 30 at 12, Kellum SOF ¶ 33. Kellum asked Gwaltney for help filing a written grievance, and Gwaltney did so—including helping Kellum measure the distance from the parking lot to the door and revising her written grievance. ECF No. 26 at 4, Gwaltney SOF ¶ 9. Kellum filed her grievance about the parking accommodation on February 26, 2014. ECF No. 26 at 4, Gwaltney SOF ¶ 9. Seward denied Kellum's grievance through a voicemail to Gwaltney. ECF No. 26 at 4, Gwaltney SOF ¶¶ 9-10. Gwaltney then assisted Kellum in filing a Freedom of Information Act request to obtain the voicemail such that she could file an EEOC charge. ECF No. 26 at 4, Gwaltney SOF ¶¶ 10-12.

Day investigated Kellum's complaints about the parking situation. ECF No. 30 at 12, Kellum SOF ¶ 33. Day found that Kellum's complaint had merit and informed County officials— including Mark Popovich ("Popovich"), the County Attorney. ECF No. 30 at 12, Kellum SOF ¶¶ 33-34. Around that time, Popovich told Day that Kellum was a "troublemaker" and that he wished he could "get rid of her" and that if there was a way he could get rid of her, he would. ECF No. 30 at 12-13, Kellum SOF ¶ 35. On March 10, 2014, twelve days after Day informed County officials that Kellum's claim had merit and that her parking accommodation should be restored, the County fired Day. ECF No. 30 at 13, Kellum SOF ¶ 36. Day brought suit against the County

alleging wrongful termination and retaliation in violation of the ADA for advocating on behalf of Kellum (the "Brandy Day Litigation"). ECF No. 26 at 7, Gwaltney SOF ¶ 24; ECF No. 30 at 13, Kellum SOF ¶ 37. Kellum filed her first EEOC charge in early 2014, which the EEOC did not act upon. *See* ECF No. 26 at 4, Gwaltney SOF ¶ 12; ECF No. 30 at 6, Kellum SOF ¶ 11. Kellum's MS symptoms continued to get worse, and Kellum filed a second EEOC charge in March of 2015. ECF No. 26 at 5, Gwaltney SOF ¶ 13; ECF No. 30 at 13, Kellum SOF ¶ 39. The EEOC investigated Kellum's Second EEOC charge until June of 2016. ECF No. 30 at 14, Kellum SOF ¶ 39.

Throughout Kellum's time in the Commissioner of Revenue's office, Gwaltney assisted her in various ways to alleviate obstacles Kellum faced resulting from her MS. For example, Gwaltney (1) moved Kellum's workstation from a raised platform to a ground-level station (ECF No. 26 at 4, Gwaltney SOF ¶ 13); (2) moved Kellum to a quieter station upon her request (ECF No. 26 at 5, Gwaltney SOF ¶13); (3) sought to install a ramp to the raised work area, and when he could not due to building code regulations, he added a rail and rubber matting to the steps to the raised work area (ECF No. 26 at 5, Gwaltney SOF ¶ 14); (4) obliged to Kellum's request for a different daily planner once she began having vision troubles (ECF No. 26 at 5, Gwaltney SOF ¶¶ 15-16); (5) investigated purchasing software to assist Kellum because of her vision issues, which Kellum declined (ECF No. 26 at 5, Gwaltney SOF ¶ 16); and (6) always granted Kellum's request for time off due to appointments related to her MS (ECF No. 26 at 5, Gwaltney SOF ¶ 17).

**Gwaltney Opts Out of The County Personnel Policy**

The Isle of Wight maintains a document entitled "Personnel Policies and Procedures Manual of Isle of Wight County" ("Personnel Policy") which governs the County's policies related to "employment, compensation, promotion, demotion, dismissal, and all other activities dealing with personnel…" ECF No. 24 at 4, IOWC SOF ¶ 15. The Personnel Policy exempts

7

constitutional officers and their employees by categorizing them as "unclassified employees." ECF No. 24 at 2, 5-6, IOWC SOF ¶¶ 7, 18. However, the constitutional officers have the option to affirmatively opt into the Personnel Policy, and have their employees included in the classified service, including its grievance procedures. ECF No. 24 at 5-6, IOWC SOF ¶ 18. While Gwaltney was the Commissioner of Revenue between 1980 and 2002, he opted out of the County's personnel policy. ECF No. 24 at 3, IOWC SOF ¶ 8; ECF No. 26 at 6, Gwaltney SOF ¶ 18.

After Gwaltney left the position of Commissioner of Revenue in 2002, his successor as opted in to the County's Personnel Policy so that employees of the constitutional officers were covered by the County's disciplinary and grievance policies. ECF No. 24 at 2, IOWC SOF ¶ 6. The employees in the Commissioner of Revenue's office remained opted in to the County's disciplinary and grievance policies until January 2016. ECF No. 24 at 3, IOWC SOF ¶ 8; ECF No. 26 at 6, Gwaltney SOF ¶ 18.

During the fall of 2015, Gwaltney and other constitutional officers in the Isle of Wight County decided to make several changes to the Memorandum of Agreement ("MOA") with the County. ECF No. 26 at 5-6, Gwaltney SOF ¶ 18. The MOA was changed to reflect that employees of the constitutional officers were specifically exempted from the County's grievance and disciplinary policies. *Id.* The MOA also placed the employees in the Commissioner of Revenue's office under the County's pay plan. ECF No. 24 at 3, IOWC SOF ¶ 10; ECF No. 26 at 5-6, Gwaltney SOF ¶ 18. Gwaltney initiated the effort to remove the employees in the Constitutional officers' offices exempted from the Personnel Policy. ECF No. 24 at 3, IOWC SOF ¶ 8; ECF No. 30 at 14, Kellum SOF ¶ 40. Sometime in November 2015 Gwaltney told Kellum that the reason for the change was that he intended to fire her. ECF No. 30 at 14, Kellum SOF ¶ 40.

On November 5, 2015, Gwaltney held a staff meeting to inform the individuals working in

8

the Commissioner of Revenue's office that the policy was going to be changed. ECF No. 24 at 3, IOWC SOF ¶ 11; ECF No. 26 at 19, Gwaltney SOF ¶ 19. Afterward, each employee in the Commissioner of Revenue's office, including Kellum, signed a form entitled "Individual Acknowledgment of the Isle of Wight County Employee Personnel Policy Manual" which stated that the Manual is not a contract of employment, and reiterated Kellum's status as an employee at will. ECF No. 26 at 6, Gwaltney SOF ¶ 19. The MOA became effective on January 1, 2016, affirmatively opting out the Commissioner of Revenue's employees from the Personnel Policy. ECF No. 24 at 3, IOWC SOF ¶ 8; ECF No. 26 at 6, Gwaltney SOF ¶ 21.

**Kellum Removes Her Vehicle From the Tax Rolls of the County**

One of the duties of the Commissioner of Revenue includes assessing the personal property tax for motor vehicles, which is applied to cars, trucks, mobile homes, and campers. ECF No. 24 at 2, IOWC SOF ¶¶ 4-5. The Virginia Department of Motor Vehicles provides the County an "annual list" and a "semi-annual list" which identify vehicles actively registered and garaged in the County. ECF No. 24 at 6, IOWC SOF ¶ 21. The Commissioner of Revenue's office puts this data in their database—MUNIS, and then the Commissioner of Revenue's office reviews the records for discrepancies. *Id.* Meagan Doggett ("Doggett"), another employee in the Commissioner of Revenue's office, was responsible for converting the data from the MUNIS database and the DMV to an Excel spreadsheet for a tax compliance auditor to review. ECF No. 24 at 6, IOWC SOF ¶¶ 20-21.

One of Kellum's job responsibilities was to review the excel spreadsheet reflecting discrepancies between DMV records and County records, called an "error list", to determine whether or not County residents paid their personal property tax for motor vehicles. ECF No. 24 at 7, IOWC SOF ¶ 22. Kellum's health began to decline in 2016, and Kellum moved in with her

9

daughter who lived in Surry County. ECF No. 26 at 7, Gwaltney SOF ¶ 22; ECF No. 30, Kellum

SOF ¶ 45. On March 4, 2016, Kellum asked one of her co-workers, Jill Benhart, to change the

MUNIS system to remove her car from the County MUNIS system, as she or her daughter had, or

were going to, submit a personal property tax form in Surry County. ECF No. 26 at 7, Gwaltney

SOF ¶ 23; ECF No. 30 at 15, Kellum SOF ¶ 46. On May 30, 2016, Kellum asked another employee

to reflect her address as Surry County in the system. ECF No. 26 at 7, Gwaltney SOF ¶ 23.

Although Kellum was involved in the semiannual audit in July 2016, neither Kellum nor anyone

else indicated a reason for the change of Kellum's garage jurisdiction. ECF No. 24 at 10, IOWC

¶ 39; ECF No. 26 at 7, Gwaltney SOF ¶ 23; ECF No. 30 at 19, Kellum SOF ¶ 55

**Kellum is Terminated from Her Employment**

On January 20, 2017, Kellum testified in the Brandy Day Litigation and supported Day's

allegations of wrongful termination. ECF No. 26 at 7, Gwaltney SOF ¶¶ 24-25; ECF No. 30 at 16,

Kellum SOF ¶ 49. Gwaltney also testified in the Brandy Day Litigation in support of Day's

allegations. ECF No. 26 at 7, Gwaltney SOF ¶ 26; ECF No. 30 at 16, Kellum SOF ¶ 49.

Around January 2017, Doggett performed an audit for the year 2016 and found a

discrepancy regarding Kellum's vehicle, as it was garaged in the County but not taxed. ECF No.

24 at 7, IOWC SOF ¶ 24; ECF No. 26, Gwaltney SOF ¶ 29. Doggett brought this to the attention

of her supervisors—Gwaltney and Chief Deputy Robert Mislan. ECF No. 24 at 7-8, IOWC SOF

¶ 25; ECF No. 26 at 8, Gwaltney SOF ¶ 30. On February 1, 2017, Doggett contacted Surry County,

who informed Doggett that they did not have a personal property tax form for Kellum and she had

not been taxed in Surry County. ECF No. 24 at 8, IOWC SOF ¶ 26; ECF No. 26 at 8, Gwaltney

SOF ¶ 31. Doggett asked Kellum for her semiannual audit paperwork to see if Kellum had noted

a change in her taxing jurisdiction or otherwise explained the discrepancy, but saw no notes from

Kellum indicating a reason for the change. ECF No. 24 at 8, IOWC SOF ¶ 28; ECF No. 26 at 9, Gwaltney SOF ¶ 32. Shortly thereafter, Doggett called Surry County and asked for a confirmation email that Kellum did not fill out a personal property tax form in Surry, nor had her vehicle been taxed there. ECF No. 24 at 8, IOWC SOF ¶ 30; ECF No. 26 at 9, Gwaltney SOF ¶ 33. During that phone call, Surry County also informed Doggett that Kellum had just called and asked that Surry County tax her for the year 2016. ECF No. 24 at 9, IOWC SOF ¶ 31; ECF No. 26 at 9, Gwaltney SOF ¶ 34. That day, February 1, 2017, Doggett informed her supervisors, Gwaltney and Mislan, that Surry County confirmed they did not tax Kellum's vehicle, and forwarded them the supporting documents. ECF No. 24 at 9, IOWC SOF ¶ 33; ECF No. 26 at 9, Gwaltney SOF ¶ 34.

On February 6, 2017, Gwaltney terminated Kellum. ECF No. 26 at 9, Gwaltney SOF ¶ 35; ECF No. 30, Kellum SOF ¶ 52. Kellum does not dispute her error. ECF No. 30 at 18-19, Kellum SOF ¶ 53-55.

One of Kellum's co-workers, Jill Benhart ("Benhart"), also had an issue involving the failure to pay a personal property tax. ECF No. 30 at 16, Kellum SOF ¶ 47. There, the vehicle in question was titled in Benhart's husband's name. *Id.* The issue required the Benharts to pay four years of back taxes. *Id.* Benhart was not disciplined for the issue. *Id.*

## IV. DISCUSSION

### Kellum's ADA Claims (Counts II-V)

In Counts II and IV, Kellum alleges the County is liable for termination and retaliation in violation of the Americans with Disabilities Act ("ADA"). ECF No. 17 at 10, 15. In the alternative, Counts III and V allege termination and retaliation in violation of the ADA against the County and Gwaltney as joint employers. The County moves for summary judgment on the

11

grounds that Gwaltney was Kellum's employer and that he terminated her employment, that it does not employ Gwaltney, and therefore it cannot be liable for his actions under the ADA. Gwaltney moves for summary judgment on the grounds that, as an employer with less than fifteen employees, he cannot be liable under the ADA.  Both the County and Gwaltney also move for summary judgment on the grounds that they do not jointly employ Kellum.  Absent either employment by the County or the application of the joint employer doctrine, Kellum cannot succeed on her ADA claims.  The determination of Kellum's employer under the ADA is a question of law. *Briggs v. Waters*, No. 2:06cv154, 2006 U.S. Dist. LEXIS 44048, at *13 (E.D. Va. June 27, 2006) ("In this case, the question of whether the City is Briggs's employer is a question of law."). *See also Murry v. Jacobs Tech., Inc.*, No. 1:10-cv-771, 2012 U.S. Dist. LEXIS 48169, at *19 (M.D.N.C. Apr. 5, 2012) ("Whether a company is an employer for purposes of Title VII is a question of law for the court.").

## 1. Gwaltney is not a County Employee

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.S. § 12112. It follows that to be liable under the ADA in this type of case the entity alleged to have terminated an employee in violation of the ADA must actually be the person's employer. *See* 42 U.S.C. § 12111(1) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee."). The County moves for summary judgment on the grounds that Gwaltney was Kellum's employer and he is not a County employee, therefore it cannot be liable under the ADA for her termination. ECF No. 24 at 11-14.

12

The Virginia Constitution authorizes a number of "constitutional officers" who are elected by the voters of each county.  Va. Const. Art. VII, § 4.  The Commissioner of Revenue is a constitutional officer, along with sheriffs, clerks of court, treasurers, and commonwealth's attorneys.  *Id.*; *Hilton v. Amburgey*, 198 Va. 727, 729 (1957).  The Virginia Code sets forth constitutional officers' duties and compensation.  Va. Code Ann. § 15.2-1600 (et seq).  By virtue of the Virginia Constitution, constitutional officers are not employees of the counties in which they operate.  *United States v. Gregory*, No. 93-1391, 1994 U.S. App. LEXIS 14443, at *12 (4th Cir. June 8, 1994) ("constitutional officers, [] are beholden neither to local governing bodies, nor to the Commonwealth, but rather only to the voters who elected them.").

It is undisputed that Gwaltney is a constitutional officer and is not an employee of the County.  ECF No. 24 at 1-2, IOWC SOF ¶¶ 1-2; ECF No. 30 at 4, Kellum SOF ¶¶ 1-2.  Gwaltney is the elected Commissioner of Revenue for the County, and has been since 2006.  *Id.*  Kellum does not point to a single fact or other authority that would circumvent Gwaltney's status as a constitutional officer pursuant to the Virginia Constitution.  Moreover, the undisputed evidence in the record demonstrates that Kellum's ADA allegations arise from Gwaltney's termination of Kellum.  *See* ECF No. 26 at 9, Gwaltney SOF ¶ 35 ("Gwaltney terminated Kellum"), ECF No. 30, Kellum SOF ¶ 52 ("Gwaltney made the decision to terminate Kellum's employment").

Kellum appears to argue that even though Gwaltney is not a County employee, and without relying on the joint employer doctrine, Kellum is employed by the County.  ECF No. 30 at 20-22.  This argument is without merit because just as Gwaltney as a constitutional officer is not employed by the County, Kellum as a deputy of a constitutional officer is not employed by the County.

Constitutional officers are authorized by state statute to appoint deputies in furtherance of discharging the official duties of the office, and to remove deputies from their office.   Va. Code

13

Ann. § 15.2-1603. "Deputies appointed by constitutional officers pursuant to Virginia Code § 15.2-1603 are not employees of the local governing body." *Williams v. McDonald*, 69 F. Supp. 2d 795, 800 (E.D. Va. 1999) (citing *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990); *Witt v. Harbour*, 508 F. Supp. 378 (W.D. Va. 1980), *aff'd* 644 F.2d 883 (4th Cir. 1981), *cert. denied*, 454 U.S. 879 (1982)). The deputies are considered employees of the constitutional officer, even if a County contributes to the employee's salary. *See* Va. Code Ann. § 15.2-1605; Va. Code Ann. § 15.2-1606.

Kellum argues that she was employed by the County based on the "many varied ways [that the County has], admitted responsibility for Kellum as an employee under laws, policies, and duties." ECF No. 30 at 20-22. Specifically, Kellum cites to the County Personnel Policy, the County's responses to Kellum's EEOC charge, Kellum's W-2's, and Kellum's job description to argue that Kellum is actually an employee of the County and not Gwaltney. *Id.* at 21. However, just as with Gwaltney, Kellum cannot point to a single fact or other authority that would circumvent her status as a deputy of a constitutional officer pursuant to the Virginia Code. *See* Va. Code Ann. § 15.2-1603.

There is no genuine dispute that Kellum's ADA claims against the County arise out of Gwaltney's conduct in terminating her employment. Gwaltney is not a County employee. Consequently, the undersigned **FINDS** that the undisputed material facts establish that the Kellum cannot maintain ADA claims against the County.

## 2. The Joint Employer Doctrine Does Not Apply

Counts III and V assert termination and retaliation in violation of the ADA against Gwaltney and the County as joint employers. The County and Gwaltney move for summary

judgment on the grounds that they do not jointly employ Kellum.[4] Though the County and

Gwaltney question to the application of the joint employer doctrine in the context of the ADA[5],

the Court finds it more apt to question whether the joint employer doctrine is applicable in a case

involving constitutional officers.[6] In *Leuenberger v. Spicer*, a case involving gender

discrimination allegations against a Commonwealth's Attorney (a constitutional officer) by his

deputy where the county was also a defendant, the Court held that the joint employer doctrine was

"ill suited to the facts of [the] case because it does not involve the situation where one entity is

using an employee of another entity." Civil Action No. 5:15-cv-00036, 2016 U.S. Dist. LEXIS

10074, at *36 (W.D. Va. Jan. 28, 2016). Where constitutional officers are involved, the

circumstances involve "an employee who works only for one entity but who has some aspects of

her employment managed by another entity." *Id.* The same is true here. In any event, the Court

will analyze the joint employer doctrine for purposes of this case.

In *Butler v. Drive Auto. Indus. of Am.*, the Fourth Circuit announced a set of factors to

determine whether an individual is jointly employed by two entities, including:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;

---

[4] Kellum does not dispute that Gwaltney, on his own, is not an employer subject to the ADA. An "employer" under the ADA "means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C § 12111(5). Gwaltney argues, and Kellum does not dispute, that Gwaltney does not employ more than fifteen people and on his own, is not subject to the ADA. *See e.g.*, *United States v. Woody*, No. 3:16-cv-127, 2016 U.S. Dist. LEXIS 58374, at *8-9 (E.D. Va. Apr. 29, 2016) (noting that a constitutional officer could be subject to the ADA if he or she employs more than fifteen people). Accordingly, Gwaltney, as Kellum's sole employer, is not subject to the ADA.

[5] Both the County and Gwaltney argue that the Fourth Circuit has not adopted the joint employer doctrine in the context of the ADA. ECF No. 24 at 25; ECF No. 26 at 17 n.2. However, this Court has applied the joint employer doctrine to ADA cases. *See Crump v. United States Dep't of Navy*, Civil Action No. 2:13cv707, 2016 U.S. Dist. LEXIS 27882, at *1 (E.D. Va. Mar. 3, 2016). Neither the County or Gwaltney provide, nor does the Court see, any persuasive reason why the joint employer doctrine does not or should not apply in the ADA context.

[6] The joint employer doctrine is most often applied in situations where one company (such as a staffing agency) contracts with another to provide employees to work for the non-employer company. *See e.g.*, *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 406 (4th Cir. 2015) (involving a staffing agency); *EEOC v. Huntington Ingalls, Inc.*, Civil Action No. 4:17cv113, 2018 U.S. Dist. LEXIS 203574, at *18-19 (E.D. Va. Nov. 29, 2018) ("The basis for the finding that two companies are 'joint employers' is that 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'"

(3) whether the putative employer furnishes the equipment used and the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.

793 F.3d 404, 414 (4th Cir. 2015). Although "no one factor is determinative," the first three factors are the most important to an analysis under the joint employer doctrine, and "control remains the 'principle guidepost' in the analysis." *Id.* Additionally, a joint employer may be liable "if it participates in a co-employer's discrimination or if the joint employer knew or should have known of [a co-employer's] discrimination and failed to take corrective action within its control." *Crump v. United States Dep't of Navy*, Civil Action No. 2:13cv707, 2016 U.S. Dist. LEXIS 27882, at *6-7 (E.D. Va. Mar. 3, 2016) (citations and quotations omitted).

With respect to the first factor, the record demonstrates that Gwaltney has the authority to hire and fire individuals working in his office. ECF No. 26, Gwaltney SOF ¶ 2. Though he may have to present such information to the County for processing,[7] it is Gwaltney who has the control over hiring and firing decisions. *See* ECF No. 26, attach. 2 at 4 (Johnson Dep. 113:17-20 "The decision is made by the Commissioner of Revenue."). Gwaltney's control with respect to firing decisions is especially evidenced by the fact that there is no dispute that Gwaltney did in fact fire

---

[7] Citing the deposition of County HR Director Mary Beth Johnson, Kellum contends that "Gwaltney merely recommends the hiring of employees whose actual hiring must be approved by the Human Resources Department and ultimately by the County administrator." ECF No. 30, Kellum SOF ¶ 12 (citing Johnson Dep. 111-114). However, this conclusory statement mischaracterizes Johnson's complete testimony, as she testified that, while the Human Resources Department administratively handled the application process, Gwaltney as Commissioner of Revenue determined who to interview and who to hire. ECF No. 30, attach. 22 at 9-12 (Johnson Dep. 111-114).

Kellum. ECF No. 26 at 9, Gwaltney SOF ¶ 35; ECF No. 30 at 17, Kellum SOF ¶ 52 ("Gwaltney made the decision to terminate Kellum's employment"). There is no evidence in the record that he needed or received permission from the County to take such action. Even taking as true Kellum's assertion that Gwaltney did not have the power to fire until the execution of the MOA in January 2016, he was able to do so at the time he fired Kellum, which is the only relevant time for purposes of analyzing the joint employer doctrine.[8]

With respect to the second factor, the record demonstrates that employees of the Commissioner of Revenue conducted the day-to-day supervision of Kellum. Gwaltney and Robert Mislan were Kellum's supervisors. ECF No. 30 at 14, Kellum SOF ¶ 39. Meagan Doggett was responsible for managing Kellum's workflow. ECF No. 24, IOWC SOF ¶ 20. There is no evidence in the record that individuals employed by the County had any supervision over Kellum's day-to-day duties.

As to the third factor, neither Kellum, nor the County or Gwaltney offered much by way of factual evidence that the County supplied Kellum's equipment and place of work.[9] However, the record does show that Gwaltney took acts to furnish Kellum any equipment she needed to perform her work, such as attempting to install a ramp in the office, moving her workstation to a ground-level station, moving her to a quieter station, purchasing a daily planner for Kellum, and offering to purchase software to alleviate Kellum's vision issues. See ECF No. 26 at 4-5, Gwaltney

---

[8] Kellum argues that "[t]he language [in the MOA] purporting to deprive Kellum of the discipline and grievance rights set forth in the [Personnel Policy] is nonsensical." ECF No. 30 at 23. The Court disagrees. The MOA states that the office "shall coordinate with the County's Department of Human Resources on all personnel matters except for grievance and disciplinary matters." ECF No. 24, attach. 2.

[9] The Court notes that Kellum does not provide sufficient factual evidence from the record that the County provided Kellum's equipment or place to work, other than a mere assertion that "[t]he County supplied her equipment and place of work." ECF No. 30 at 23. Counsel's assertions in a brief, without evidentiary support, are insufficient to create a genuine issue of material fact. See Robinson v. Tennis, 2013 U.S. Dist. LEXIS 197470, at *22 (M.D. Pa. Aug. 29, 2013) ("It is well settled that: '[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials.'") (citing Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)).

SOF at ¶¶ 13-17. Thus, the first two of the three most important factors weigh strongly in favor, and the third weighs at least slightly in favor, of a finding that the County does not jointly employ Kellum.

With respect to the remaining factors, the record demonstrates that both the County and Kellum possessed Kellum's employment records. Kellum's W-2 identifies her employer as "Isle of Wight County". ECF No. 30, attach. 4. However, the record also demonstrates that Gwaltney, through the MOA, specifically allowed for payment of his staff through the County. Specifically, the MOA states "The Parties agree that all paychecks and all payroll deduction checks shall be issued through the County's Department of Budget and finance..." ECF No. 24, attach. 2. Gwaltney also provided Kellum training related to her job duties. ECF No. 26 at 2, Gwaltney SOF ¶ 2.[10]

There is no evidence in the record that Kellum does any substantive work for the County. Rather, her job responsibilities are in tax administration for the Commissioner of Revenue. ECF No. 24 at 7, IOWC SOF ¶ 22. Kellum does not have any duties as far is the County is concerned. She is solely assigned to work in the Commissioner of Revenue's office. Finally, there is no indication that the County ever intended to enter an employment relationship with Kellum.

Taking all these factors into consideration, and mindful of the Fourth Circuit's focus on control, Gwaltney and the County are not joint employers. Looking at the first three factors, it is evident from the record that Gwaltney had the requisite control over Kellum to be her employer. Gwaltney had control over hiring and firing, Kellum's day-to-day supervision, and ensured Kellum

---

[10] The Court notes that Kellum does not provide sufficient factual evidence from the record that the County provided Kellum any sort of training. Kellum's opposition brief merely states that the County provided Kellum with "training as to County policies, benefits, statutory protections, harassment policies, etc." ECF No. 30 at 24. This is insufficient to create a genuine issue of material fact. *See supra* note 9.

had the equipment necessary to do her job—even if he did not supply the building in which she worked. Although aspects of Kellum's employment were managed by the County, such as those relating to human resources, the most functional aspects of Kellum's employment were controlled by Gwaltney as the Commissioner of Revenue. *Greene v. Harris Corp.*, 653 F. App'x 160, 164 (4th Cir. 2016) (noting the *Butler* factors are "not intended for mechanical application, but instead provide a framework to elicit the true nature of a putative employment relationship.").

For the reasons discussed above, the Court **FINDS** there is no genuine dispute of material fact that the County and Gwaltney did not jointly employ Kellum.[11]

### 3. Underlying Merits of Kellum's ADA claims.

Assuming *arguendo*, that the Court were to consider the County and Gwaltney liable as joint employers, they would still be entitled to summary judgment for Kellum's claims of termination and retaliation in violation of the ADA.

A plaintiff may prove discrimination based on both termination and retaliation in violation of the ADA through direct evidence, or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006); *see also Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995) (applying the *McDonnell Douglas* burden-shifting framework to cases under the ADA). Under the *McDonnell Douglas* framework, the plaintiff must initially prove, by a preponderance of the evidence, a *prima facie* case for intentional discrimination. *Emami v. Bolden*, 241 F. Supp. 3d 673, 679 (E.D. Va. 2017) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). If a plaintiff can establish a *prima facie* case, then "the burden shifts to the

---

[11] Although Counts III and V are asserted against the County and Gwaltney, the Court notes that Kellum cannot seek relief against Gwaltney, even if the joint employer doctrine did apply, because he is not subject to the ADA. *See supra* note 4.

defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995). To meet this burden, the defendant "need not persuade the court that it was actually motivated by the proffered reasons...[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254.

If the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that defendant's "stated reason . . . was in fact pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804. To determine pretext, the Court must evaluate (i) whether Plaintiff has established that Defendant's explanation was not the true explanation for Plaintiff's termination, *see Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148-49 (2000); (ii) whether Plaintiff has established that there is evidence sufficiently probative of discrimination, *see Ullrich v. CEXEC, Inc.*, 233 F. Supp. 3d 515, 528 (E.D. Va. 2017) (quoting *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004)); (iii) whether Defendant has proffered any factors supportive of Defendant's case, *see Reeves*, 530 U.S. at 148-49; and (iv) whether Plaintiff has met her "ultimate burden of proving that she has been the victim of intentional discrimination." *Smith v. Strayer Univ. Corp.*, 79 F. Supp. 3d 591, 599 (E.D. Va. 2015) (quoting *Ennis*, 53 F.3d at 58). Throughout the analysis, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of "the ultimate question of discrimination *vel non*." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010) (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)).

### A. Retaliation in Violation of the ADA

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter…" 42 U.S.C. § 12203(a)-(b). Retaliation claims are analyzed under the *McDonnell-Douglas* burden-shifting framework set forth above.

### 1. Plaintiff's Prima Face Case

"To establish a *prima facie* retaliation claim under the ADA, a plaintiff must prove (1) [s]he engaged in protected conduct, (2) [s]he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012).

Kellum argues she engaged in protected conduct by testifying in the Brandy Day Litigation in support of Day and by filing her own EEOC complaint in March 2015. There is no dispute these actions are protected conduct under the ADA. *See Gupta v. Mac*, Civil Action No. 1:19-cv-00109, 2019 U.S. Dist. LEXIS 195062, at *12 (E.D. Va. Nov. 8, 2019) (noting that protected activity "making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing pursuant to the [ADA]."). There is also no dispute that Kellum suffered an adverse action—namely the termination of her employment. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (termination is an adverse employment action). Therefore, the only remaining element of Kellum's *prima facie* case for retaliation the Court need to consider is whether there was a causal connection between Kellum's protected activity and termination.

A plaintiff can establish a causal connection through circumstantial evidence, including temporal proximity. *See Mohammed v. Cent. Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932,

21

945 (E.D. Va. 2015). Temporal proximity may show a causal link, "only if an employer's knowledge of protected activity and the adverse employment action that follows are very closely related in time." *Emami*, 241 F. Supp. 3d at 681. A court cannot infer causation where months pass between the protected conduct and adverse employment action, absent evidence of intervening retaliatory conduct. *Evans v. Larchmont Baptist Church Infant Care Ctr., Inc.*, No. 2:11cv306, 2012 U.S. Dist. LEXIS 27335, at *17-18 (E.D. Va. Feb. 29, 2012) (plaintiff not entitled to inference of causation where adverse employment action occurred seven months after the protected activity). If a plaintiff cannot show temporal proximity, the plaintiff must present other relevant evidence to establish a causal connection, such as "intervening antagonism or retaliatory animus, inconsistent reasons for termination, or the defendant's conduct toward others." *Mohammed*, 128 F. Supp. 3d at 945 (E.D. Va. 2015).

Kellum argues the temporal proximity between her testimony in the Brandy Day Litigation and termination is sufficient to establish causation for the purposes of her *prima facie* case. The record demonstrates that Kellum testified in the Brandy Day Litigation on January 20, 2017 (ECF No. 26 at 7, Gwaltney SOF ¶ 25; ECF No. 30 at 16, Kellum SOF ¶ 48), and was terminated on or around February 6, 2017. ECF No. 26 at 9, Gwaltney SOF ¶ 35; ECF No. 30 at 17, Kellum SOF ¶ 52. Gwaltney does not dispute that he knew Kellum was going to testify, but contends he never learned the contents of Kellum's testimony. ECF No. 26 at 7, Gwaltney SOF ¶ 25.

Interpreting the undisputed facts in the light most favorable Kellum, approximately seventeen days between Kellum's testimony and her termination may provide a sufficiently narrow window of time to raise an inference of a causal connection for the purposes of establishing her *prima facie* case. *See Emami*, 241 F. Supp. 3d at 681 (holding that "for purposes of the 'less onerous burden' imposed by the third element of the prima facie case, adverse action occurring

22

shortly after the protected activity is sufficient.").

Kellum's March 2015 EEOC charge, however, was filed almost two years before her termination (ECF No. 30, Kellum SOF ¶ 39) and she cannot rely on temporal proximity to show a causal connection between her charge of discrimination and her termination. *See Evans*, 2012 U.S. Dist. LEXIS 27335, at *17-18 (plaintiff not entitled to inference of causation adverse employment action occurred seven months after the protected activity). After filing her EEOC charge, Kellum alleges the tension between her and her superiors was "exacerbated" and her "relationship with Gwaltney greatly worsened." ECF No. 30, Kellum SOF ¶ 39. Kellum also cites to Gwaltney's effort to remove his employees from the County Personnel Policy, and his alleged statement in November of 2015 that he intended to fire her as additional evidence of his animus towards her as a result of her filing her March 2015 EEOC charge.[12]  *Id.*, Kellum SOF ¶ 40. Although temporal proximity does not show a causal connection, as the MOA became effective January 1, 2016 and Kellum was not fired until over a year later, taking Kellum's statements as true, Gwaltney's effort and statement may demonstrate sufficient retaliatory animus to demonstrate a causal connection. Viewing the evidence in light most favorable to Kellum and because "very little evidence of a causal connection is required to establish a prima facie case of retaliation" the Court **FINDS** Kellum has demonstrated a *prima facie* case of retaliation. *See Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) (citation and quotation omitted).

### 2. Gwaltney's Legitimate, Nondiscriminatory Reasons for Termination

Because Kellum has demonstrated a *prima facie* case of retaliation in violation of the ADA, the burden shifts to Defendants to demonstrate a legitimate, nondiscriminatory reason for Kellum's

---

[12] To the extent Kellum relies on the statement made by Mark Popovich, County Attorney to Brandy Day that Kellum was a "trouble maker" and he "would fire her if [he] could," this statement was made in the spring of 2014, before Kellum filed her second EEOC charge. ECF No. 30 at 12, Kellum SOF ¶ 35.

termination. *See Ennis*, 53 F.3d at 58. To meet this burden,

> The defendant need not persuade the court that it was actually motivated by the proffered reasons. *See [Bd. of Trs. of Keene State Coll. v.] Sweeney*, [439 U.S. 24, 25 (1978).] . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth . . . the reasons for the plaintiff's [termination] . . . with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

*Burdine*, 450 U.S. at 254-56. A defendant's explanation "must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. However, "the defendant bears the burden of production, not persuasion, and the burden can involve no credibility assessment." *Pettus v. Am. Safety Razor Co.*, No. CIV. A. 599CV000103, 2001 WL 418723, at *5 (W.D. Va. Mar. 29, 2001) (citing *Reeves*, 530 U.S. at 142).

Gwaltney and the County assert Kellum's employment was terminated because Kellum intentionally removed herself from the tax rolls of the County and did not report her vehicle to Surry for taxation. ECF No. 24 at 9, IOWC SOF ¶ 35; ECF No. 26, Gwaltney SOF ¶ 35. Kellum "concedes the error" (ECF No. 30 at 18, Kellum SOF ¶ 53) and the unrefuted evidence in the record before the Court establishes that Kellum removed herself from the tax rolls of the County, and did not file a personal property tax form in Surry County in 2016. ECF No. 30 at 15, Kellum SOF ¶ 46 ("Kellum admits that she asked a fellow employee within the COR office to change her information within the COR's MUNIS tax accounting system because she had moved in with her daughter...[s]he does admit that she told a COR employee that her daughter had [submitted a personal property tax form to Surry County] or that she intended to do so."). Gwaltney provided evidence that, by removing her vehicle from the tax rolls in Isle of Wight County and failing to file the appropriate personal property tax form in Surry County, he found Kellum had failed to comply with tax laws and therefore was untrustworthy, especially in light of her actions and her

role as a compliance auditor. ECF No. 26 at 9-10, Gwaltney SOF ¶ 35; ECF No. 26, attach. 14.

Kellum's admits that she arranged to have her vehicle removed from the Isle of Wight tax rolls and did not add it to the Surry County tax rolls, and therefore had not been taxed, but argues that this was "a product of error not intent." ECF No. 30, Kellum SOF ¶ 53. However, this argument is unavailing, because the issue is not whether Kellum intended to fail to comply with the tax laws, but rather whether the decision-maker who terminated her—Gwaltney—honestly believed she actually committed the conduct alleged and therefore terminated her because of it. *See e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) ("it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Because Gwaltney proffered a legitimate, non-discriminatory reason for Kellum's termination, the Court **FINDS** Gwaltney has met his burden of production.

### 3. Kellum Failed to Establish that Gwaltney's Legitimate, Nondiscriminatory Reason for Terminating Kellum Was Pretextual

After a defendant meets its burden of producing a legitimate, nondiscriminatory reason for termination, the plaintiff has an opportunity to show that the defendant's "stated reason . . . was in fact pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804. "[T]he *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s]" at this stage of the analysis. *Reeves*, 530 U.S. at 142-43 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)). A plaintiff can demonstrate pretext "directly by persuading the court that a discriminatory reason more likely motivated the [Defendant,] or indirectly by showing that the [Defendant's] proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. In *Reeves*, the Supreme Court clarified the standard:

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive . . . [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated . . . [However,] there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

530 U.S. at 147-48.

To determine pretext, the Court must evaluate (i) whether Plaintiff has established that Defendant's explanation was not the true explanation for Plaintiff's termination, *see id.* at 148-49; *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); (ii) whether Plaintiff has established that there is evidence sufficiently probative of discrimination, *see Ullrich*, 233 F. Supp. 3d at 528 (quoting *Mereish*, 359 F.3d at 335); (iii) whether Defendant has proffered any factors supportive of Defendant's case, *see Reeves*, 530 U.S. at 148-49; and (iv) whether Plaintiff has met her "ultimate burden of proving that she has been the victim of intentional discrimination," *see Smith*, 79 F. Supp. 3d at 599 (quoting *Ennis*, 53 F.3d at 58). The Fourth Circuit has held that, in order to establish that an employer's "proffered reason for the challenged action is pretext for discrimination, the plaintiff must prove 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 377-78 (4th Cir. 1983) (quoting *Hicks*, 509 U.S. at 515).

Kellum offers the following evidence to rebut Gwaltney's articulated nondiscriminatory reason for her termination: (1) the temporal proximity between Kellum's testimony in the Brandy Day Litigation and her termination; (2) the County Attorney, Mark Popovich's statement to Day that he would fire Kellum if he could; (3) Gwaltney's statement to Kellum and his effort to eliminate the grievance policies; and (4) disparate discipline between Kellum and Jill Benhart.

26

ECF No. 30 at 28-30.

First, with respect to Kellum's testimony in the Brandy Day Litigation, Kellum argues that the temporal proximity between Kellum's testimony in support of Day and her termination, alone, is sufficient to create a genuine issue of material fact. However, law in the Fourth Circuit is clear that temporal proximity, alone, is insufficient to create an inference of pretext. *Nathan v. Takeda Pharm. Am., Inc.*, 890 F. Supp. 2d 629, 648 (E.D. Va. 2012) ("temporal proximity alone, while perhaps sufficient to establish causation for the purposes of a prima facie case, cannot create a sufficient inference of pretext."). Gwaltney has offered evidence that did not know the contents of Kellum's testimony when he terminated her, which Kellum has not refuted. *See* ECF No. 26 at 7, Gwaltney SOF ¶ 25; ECF No. 26, attach. 1 at 26 (Gwaltney Dep. 60:5-8 "I don't know what questions were asked. I don't know what was said. I only knew she was being deposed because [Kellum] told me she was coming up for the depositions. That's the extent of what I knew."). Without knowing the contents of Kellum's testimony, the record does not establish that Gwaltney could have relied on the substance of such testimony in his decision to termination Kellum. Moreover, the record establishes that Gwaltney himself also testified in support of Day, so the mere fact that he knew Kellum was also testifying in support of Day provides little indication that the fact that she testified was held against her. ECF No. 26, Gwaltney SOF ¶ 26. Day agreed that Gwaltney said nice things about her, that Gwaltney had no problem with her performance, that they had a good, professional working relationship, and he was not adverse to her in any manner in her litigation against the County, which also mitigates against the inference that Gwaltney held Kellum's testimony in favor of Day against her. *Id.*, attach. 5 at 9 (Day Dep. 19:16-25, 20:1-14). Nothing in the record, other than proximity in time, suggests, as a reasonable probability, that Kellum's favorable testimony in the Brandy Day Litigation affected her termination in any

27

manner.

Secondly, Kellum argues that Mark Popovich's statement to Day in 2014 that Kellum was a "troublemaker" and he "would fire her if [he] could" is evidence of Gwaltney's "clear and discriminatory retaliatory animus toward Kellum." ECF No. 30 at 29. Kellum points to the facts that Popovich was involved in defending the County against Kellum's March 2015 Charge of Discrimination[13] and that Gwaltney and Popovich "were meeting frequently around the time of Kellum's termination and met in Gwaltney's office for twenty minutes on the day before her termination" in support of her pretext argument. *Id.* Kellum's argument is unpersuasive, most significantly because there is no evidence in the record that Gwaltney heard or otherwise knew of Popovich's statement to Day, or that Gwaltney knew of any animus at all that Popovich may have had against Kellum. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) (noting courts must be "cautious" to attribute to decision-maker "unfortunate expressions and beliefs of those around him[.]"). The fact that Gwaltney and Popovich met frequently near Kellum's termination and on the day before is not of consequence. There is no evidence they discussed Kellum, and even if they did, there is no evidence that such a discussion had any effect on Gwaltney's decision to terminate Kellum. Absent any evidence linking Gwaltney's termination decision and Popovich's single comment about Kellum three years before Gwaltney terminated her employment, Popovich's single statement about a desire to fire Kellum does not create any inference of pretext to Gwaltney. *See Merritt*, 601 F.3d at 300 (4th Cir. 2010) ("It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced.").

---

[13] The Court notes that there is no evidence in the record supporting Kellum's assertion that Popovich was involved in the March 2015 EEOC charge investigation. This is insufficient to create a genuine issue of material fact. *See supra* note 9.

Kellum also points to Gwaltney's statement to Kellum that he was changing the grievance policy in order to fire her and removing his employees from the Personnel Policy with respect to grievance and discipline polices as evidence that the Gwaltney's stated reason for firing her was pretextual. However, Gwaltney is said to have made this statement to Kellum in 2015, and the MOA became effective on January 1, 2016, and Kellum was not fired until over a year later. Under Gwaltney's new policy, there was no reason he could not fire Kellum at any time in 2016 if it was his intent to do so.

Finally, Kellum argues the disparate treatment between Jill Benhart ("Benhart"), a fellow employee, and Kellum demonstrates pretext. A comparator may be used to show pretext of discrimination. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) (noting that comparator evidence is "especially relevant"). "In evaluating similarly-situated comparators, employees are similarly situated if they are similar in all relevant respects. *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 674 (E.D. Va. 2009). A plaintiff must allege that the comparator "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)

According to Kellum, Benhart's family owned a camper or trailer on which they did not pay a personal property tax for four years. ECF No. 30 at 16, Kellum SOF ¶ 47. When the situation came to light, Benhart was required to pay four years of back taxes, and Gwaltney did not speak to Benhart or discipline her regarding the issue. *Id.*

Gwaltney contends that Benhart is not a suitable comparator because of the differences in the circumstances between the two situations. ECF No. 34 at 16. Gwaltney points out that the Benhart's camper or trailer was titled in her husband's name, and Benhart did not take affirmative

steps to remove the vehicle from the tax rolls, but instead the lapse in tax payments was due to his status as a member of the uniformed services. *Id.* These important aspects distinguish Benhart from being a similarly-situated comparator. First, there is no dispute that the vehicle was titled in Benhart's husband's name, not in Jill Benhart's name. ECF No. 30, Kellum SOF ¶ 47; ECF No. 30, attach. 17 at 14 (Gwaltney Dep. 51:12-18). Second, there is no evidence in the record that Benhart affirmatively changed the tax status of the vehicle, or otherwise took deliberate steps to avoid payment of taxes. Accordingly, Benhart did not engage in the same conduct as Kellum, and mitigating circumstances distinguish Kellum's conduct and Gwaltney's treatment of it. *See Haywood*, 387 F. App'x at 359; *Tomasello v. Fairfax Cty.*, No. 1:15-cv-95, 2016 U.S. Dist. LEXIS 5578, at *34 (E.D. Va. Jan. 13, 2016) (declining to rely on comparator evidence to support an inference of discrimination where the undisputed facts demonstrate that none of the proposed comparators misconduct related to truthfulness). Kellum also argues that Gwaltney "chose not to investigate the [Benhart] matter or even to interview Benhart." ECF No. 30 at 30. However, an "improper or substandard" investigation does not demonstrate a reasonable inference of pretext. *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011).

Here, it is undisputed that Kellum intentionally caused her vehicle to be removed from the Isle of Wight County tax rolls and did not register it in Surry County, and there is no evidence in the record to suggest that Gwaltney's proffered reason for terminating Kellum because of this conduct was false, or that discrimination was the "real reason" for her termination. *See Jiminez*, 57 F.3d at 377-78. Although Kellum proffers that her error was an unintentional mistake, there is no evidence to suggest Gwaltney, the constitutional officer whose duties included insuring that all county residents paid their personal property taxes, perhaps most especially his own deputy, did not genuinely hold his belief that such conduct demonstrated untrustworthiness justifying

Kellum's termination.

Further, the record demonstrates that Doggett investigated the discrepancy with Kellum's vehicle in the tax rolls, communicated with Surry County to determine Kellum did not pay a personal property tax there, and then presented the information she gathered to Gwaltney. ECF No. 26 at 9-10, Gwaltney SOF ¶¶31-37. Based on these facts, Gwaltney concluded Kellum was untrustworthy and terminated her. *Id.*, Gwaltney SOF ¶ 35. There is no evidence that Gwaltney's proffered basis for terminating Kellum was not honestly held. *Tomasello*, 2016 U.S. Dist. LEXIS 5578, at *39 ("An employer's proffered legitimate basis for an employment action is considered honestly held if the employer can establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."). Even if Kellum's error was an honest mistake, it is not for the Court to decide whether Gwaltney's decision to terminate Kellum was "wise, fair, or correct" nor does the Court "sit as a kind of super-personnel department weighing the prudence of employment decisions[.]" *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 350 (4th Cir. 2014). Kellum has not met her burden of persuasion that Gwaltney's proffered reason for her termination was a pretext for retaliation.

### B. Termination in Violation of the ADA

The Court notes that Kellum has devoted almost no attention to defend her termination in violation of the ADA claim. *Westry v. North Carolina AT&T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003) (finding that plaintiff waived a claim by failing to address defendant's refutation of it). In any event, even assuming Kellum demonstrated a *prima facie* case of termination in violation of the ADA, as discussed at length above, there is no genuine issue of material fact that Gwaltney's legitimate, nondiscriminatory reason for termination was not a pretext for discrimination in violation of the ADA.

31

Based on the foregoing, the Court **RECOMMENDS** Gwaltney and the County's Motions for Summary Judgment with respect to Kellum's ADA claims (Counts II-V) be **GRANTED.**

## Kellum's Constitutional Claim (Count VI)

Count VI alleges both the County and Gwaltney are liable for terminating Kellum's employment in violation of her Fourteenth Amendment right to procedural due process. ECF No. 17 at 13. The County moves for summary judgment again, on the grounds that it does not employ Gwaltney or Kellum and cannot be liable for Gwaltney's actions. Gwaltney does not dispute that he can be generally subject to liability through 42 U.S.C. § 1983, but rather moves for summary judgment on the grounds that Kellum does not have a property interest in her employment protectable by the Fourteenth Amendment.

At the outset, the Court notes that in light of the above determination that the County does not employ either Gwaltney or Kellum, the County cannot be liable here for any deprivation of procedural due process in violation of the Fourteenth Amendment.[14] *See* Section IV.2., *supra.* Gwaltney, however, as Kellum's employer, could be held liable for constitutional violations.

Gwaltney argues that Kellum cannot maintain a claim against Gwaltney for violating her procedural due process rights because she did not have a property interest in her employment. If a plaintiff has a property interest in her employment, procedural due process requires that a "deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing

---

[14] Even if the County was Kellum's employer, however, the County would still be entitled to summary judgment on this issue because to hold the County liable for a constitutional violation, Kellum would need to establish liability under 42 U.S.C. § 1983. To establish municipal liability under § 1983, Kellum would need to establish "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [municipality]'s officers. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). In other words, "a plaintiff seeking to establish municipal liability must plead that the municipality's custom or policy actually caused the constitutional deprivation." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 694 (E.D. Va. 2004). There is no evidence in the record that the County had a custom or policy of improperly denying its employees (which neither Kellum or Gwaltney is) of their procedural due process right to a grievance procedure (assuming there is such a right).

appropriate to the nature of the case.'" *Pignato v. Va. Dep't of Envtl. Quality*, 948 F. Supp. 532, 540 (E.D. Va. 1996) (citing *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). A plaintiff is only entitled to such rights where he or she possessed a protectable property interest in continued employment. *Herman v. Lackey*, 309 F. App'x 778, 783 (4th Cir. 2009). State law determines whether a plaintiff has a protectable property interest in continued employment. *Id.*

Virginia is an "at-will" employment state. *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 606 (E.D. Va. 2015) (citing *County of Giles v. Wines*, 262 Va. 68, 72 (2001)). In Virginia, deputies of a constitutional officer, including the Commissioner of Revenue, are designated by statute as at-will employees. *See* Virginia Code § 15.2-1603 ("[a]ny such deputy may be removed from office by his principal."); *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990) ("A local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest.").

The holding in *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990) is applicable here. There, the Court held that sheriff's deputies—who are also deputies of constitutional officers serving at the discretion of their sheriffs—do not have a protectable property interest in continued employment because state law makes them at will employees. *Id.* Similarly, and by virtue of the same state law here, Kellum has no protectable property interest in continued employment because she is an at-will employee. *Id.*

The record demonstrates that by statute, Kellum does not have a protectable property interest in her continued employment. However, Kellum's at-will status is further bolstered by the fact that Kellum signed the individual acknowledgment form on November 9, 2015. ECF No. 30 at 14, Kellum SOF ¶ 40. The individual acknowledgment form specifically states that "I understand that the Isle of Wight County Employee Personnel Policy Manual is not a contract of

employment and should not be deemed as such, *and that I am an employee at will*." ECF No. 26, attach. 7 (emphasis added). Kellum's argument that she is somehow not an employee at will by virtue of the Personnel Policy is incorrect. First, Kellum signed the individual acknowledgment clearly indicating that she is an employee at will. Second, by virtue of the MOA, Kellum and other employees of the Commissioner of Revenue's office are specifically opted out of the grievance and disciplinary policies contained in the manual. *See* ECF No. 26, attach. 8 ("this Agreement shall not apply...to the obligation of the Office abiding by personnel policies associated with the County's grievance and disciplinary policies."). Furthermore, in *Jenkins*, the Fourth Circuit specifically rejected the notion that a constitutional officer's adoption of an employee handbook containing grievance procedures can overcome the statutory authority in Va. Code § 15.2-1603[15] that allows constitutional officers to remove deputies at their discretion. *Jenkins*, 909 F.2d at 109. Accordingly, even if Kellum is correct (which she is not) that the Personnel Policy applies to her, she was still not entitled to any procedural due process upon her termination.

Because Kellum was an at-will employee, the Court **FINDS** she does not have a protectable property interest in continued employment. As such, the Court **RECOMMENDS** that Gwaltney and the County's Motion for Summary Judgment with respect to Kellum's Fourteenth Amendment claim (Count VI) be **GRANTED.**

## V. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that the County's Motion for Summary Judgment, ECF No. 23, be **GRANTED**, and Gwaltney's Motion for Summary Judgment, ECF No. 25, be **GRANTED**, and that Kellum's Amended Complaint, ECF No. 17, be **DISMISSED WITH PREJUDICE.**

---

[15] Formerly Va. Code § 15.1-48.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 13, 2020